# UNITED STATES BANKRUPTCY COURT
# WESTERN DISTRICT OF KENTUCKY

| | |
|---|---|
| IN RE: | BANKRUPTCY NO. 11-51077 |
| DIPPIN' DOTS, INC. | CHAPTER 11 |
| Debtor | |

## OBJECTION TO DEBTOR'S MOTION
## FOR AUTHORITY TO USE CASH COLLATERAL

Regions Bank ("Regions"), by counsel, objects to the Motion for Authority to Use Cash Collateral (Dkt. No. 7, the "Motion"), filed by the Debtor Dippin' Dots, Inc. (the "Debtor") on November 3, 2011. In support of this Objection, Regions states as follows:

## INTRODUCTION

As set forth below, Regions has a perfected lien on all of the Debtor's pre-petition assets, including cash. By virtue of Section 552(b)(1), Regions' liens extend to any proceeds of its original collateral, including post-petition cash received by the Debtor. Thus, all of the Debtor's cash, whether received pre- or post-petition, constitutes "cash collateral" under Section 363 of the Bankruptcy Code.

The Debtor is not capable of providing adequate protection to Regions in exchange for the use of cash collateral. The Debtor acknowledges that it has no equity in its assets. *See* Motion at ¶ 13. Under the circumstances, Regions does not consent to the use of cash collateral. Regions would be agreeable to the concept of consensual cash collateral use if the Debtor would commit itself to a timeline under which the assets of the Debtor would be sold as a going-concern to a purchaser under Section 363 of the Bankruptcy Code.[1] A sale with competitive

---

[1] Regions believes there to be a large degree of outsider bidding-interest in the marketplace. Regions' undersigned counsel has received multiple inquiries from potential purchasers of the business.

1

bidding would both ensure that the value of the Debtor's business is realized and protect the jobs of the Debtor's employees. Regions is hopeful that the Debtor will agree to this sensible approach, but at the hour of this filing, no such agreement has been reached.

Accordingly, because the Debtor cannot sustain its burden demonstrating adequate protection, Regions requests that the Court deny the Motion.

## BACKGROUND

1. Debtor is the owner and operator of a business that provides beaded ice cream and novelty products. (Motion, ¶ 7).

2. On November 3, 2011 (the "Petition Date"), the Debtor filed a petition for voluntary relief under Chapter 11 of the Bankruptcy Code and has operated since the Petition Date as a Debtor-in-Possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code.

3. Regions is Debtor's senior secured lender pursuant to eleven loan facilities which are further identified and set forth in the Appendix of Loan Documents filed on November 14, 2011 (the "Loan Documents"), which is incorporated by reference herein. The Debtor's indebtedness under the Loan Documents as of the Petition Date was $10,780,674.34 (the "Pre-Petition Indebtedness").[2]

4. On November 9, 2011, the Court entered its Interim Order Allowing Use of Cash Collateral (the "Interim Cash Order"). The Interim Cash Order provides that, "[p]ursuant to the Loan Documents, the Pre-Petition Indebtedness is secured by blanket liens and mortgages (the 'Pre-Petition Liens') in favor of [Regions] on all of the Debtor's assets, including (i) the real property located at and commonly known as 5101 Charter Oak Drive, Paducah, KY 42001 (the 'Real Estate'); and (ii) all of the Debtor's right, title interest in and to all of its personal property,

---

[2] The Debtor stipulated to a balance of $11,145,624.22 as of April 12, 2011 in the underlying (now stayed) loan

2

including, without limitation, all cash, the Debtor's inventory, equipment, instruments, documents, accounts and accounts receivable, chattel paper, deposit accounts, securities, contract rights, insurance claims, contracts, software, and all general intangibles, including trademarks and intellectual property (the 'Personalty'); and (iii) any proceeds, regardless of form, of the Real Estate or the Personalty (collectively, the 'Collateral')." (Interim Cash Order, ¶ D).

5. The Interim Cash Order further provides that "[p]ursuant to the Loan Documents, all of the Debtor's cash constitutes either Collateral or proceeds of Collateral, and therefore constitutes Region's 'cash collateral' under Section 363(a) of the Bankruptcy Code. Further, any cash received by the Debtor after the Petition Date constitutes proceeds of Collateral, and therefore also constitutes Region's 'cash collateral' under Section 363(a) of the Bankruptcy Code. Any cash in the possession of Debtor and any cash to be received by the Debtor after the Petition Date is defined herein as 'Cash Collateral.'" (Interim Cash Order, ¶ E).

6. The Interim Cash Order further provides that "Debtor stipulates that Regions has a first priority security interest in the Cash Collateral. Pursuant to Sections 361, 363 and 552(b), to the extent Debtor utilizes such Cash Collateral, Regions is granted a valid, attached, choate, enforceable, perfected and continuing security interest in, and liens upon all post-petition assets of Debtor as the same character, type, to the same nature, extent and validity as the perfected liens and encumbrances of Regions as attached pre-Petition (the 'Post-Petition Collateral')." (Interim Cash Order, ¶ 4).

---

enforcement and foreclosure action. *See* Loan Documents at Ex. 49.

# ARGUMENT

I. **THE DEBTOR'S CASH AND POST-PETITION REVENUES CONSTITUTE "CASH COLLATERAL."**

"Cash collateral" is defined to mean the following:

> Cash, negotiable instruments, documents of title, securities, deposit accounts, or other cash equivalents whenever acquired in which the estate and an entity other than the estate have an interest and includes the <u>proceeds</u>, products, rents, or profits of the property and the fees, charges, accounts or other payments for the use or occupancy of rooms and other public facilities in hotels, motels, or other lodging properties subject to a security interest as provided in section 552(b) of this title, whether existing before or after the commencement of a case under this title.

*See* 11 U.S.C. § 363(a) (emphasis added).

On information and belief, all of the Debtor's pre-petition cash constitutes either original collateral or the profits and proceeds from the sale of its inventory and the collection of accounts receivable. Pursuant to the Loan Documents, and as stated in the Interim Cash Order, Regions has a perfected security interest in all such cash. To the extent that the Debtor converts any pre-petition collateral after the Petition Date (i.e., by using pre-petition collateral to buy inventory, or by collecting pre-petition accounts post petition), the resulting collateral will constitute proceeds of Regions' original collateral. *See* KRS § 355.9-102(1)(bl) (defining "proceeds" as "(1) whatever is acquired upon the sale, lease, license, exchange, or other disposition of collateral; (2) whatever is collected on, or distributed on account of, collateral; and (3) rights arising out of collateral"). Accordingly, pursuant to Section 552(b) – which expressly preserves Regions' right to after-acquired collateral so long as such collateral constitutes the proceeds of Regions' collateral – all cash that the Debtor generates post-petition will constitute cash collateral within the ambit of Section 363(a).

Thus, pursuant to the Loan Documents and Section 552(b), all of the cash that the Debtor

4

possesses, and all of the cash that the Debtor will generate during the pendency of this case, constitutes Regions' cash collateral under Section 363 of the Bankruptcy Code. In short, every dollar generated post-petition will constitute proceeds of Regions collateral and Regions interest in such proceeds continues post-petition pursuant to Sections 363(a) and 552(b).

## II. THE CASH COLLATERAL MOTION SHOULD BE DENIED.

Because all of the Debtor's pre- and post-petition cash constitutes Regions' cash collateral, the Debtor cannot use such cash unless the Regions consents, or the Debtor is capable of providing adequate protection to Regions. *See* 11 U.S.C. § 363(c)(2), (e); 361. Because Regions does not consent, and because the Debtor is incapable of providing adequate protection, the Motion should be denied.

### A. Regions Does Not Consent to the Use of Its Cash Collateral.

Regions does not consent to the Debtor's use of the pre- or post-petition cash generated by the Debtor, both of which constitute Regions' cash collateral. *See* 11 U.S.C. § 363(c)(2)(A).

### B. The Debtor Is Incapable of Providing Adequate Protection.

The Debtor bears the burden of proving adequate protection. *See* 11 U.S.C. § 363(p)(1). The Debtor has not proposed, and cannot propose, any meaningful form of adequate protection. Because every dollar held by the Debtor, and every dollar generated by the Debtor post-petition, all constitute Regions' cash collateral, the Debtor cannot provide adequate protection payments to Regions by making adequate protection payments or by a replacement lien. *See In re Buttermilk Towne Center, LLC*, 442 B.R. 558, 566-67 (BAP 6th Cir. 2011) (adequate protection not provided when debtor provides collateral in which lender already holds security interest). Because Regions <u>already has a lien on post-petition accounts and proceeds</u> by virtue of Section 552(b) of the Bankruptcy Code, offering cash payments or a replacement lien on post-petition

cash adds nothing additional to Regions' collateral, let alone enough to offset the use of Regions' cash to pay the enormous bankruptcy administrative expenses the Debtor stands to incur.

According to its application to employ attorneys, it has already escrowed $100,000.00 with its attorneys to cover professional fees (to which Regions did not, and does not, consent), and stands to incur significant additional fees once those funds are applied. (*See* Dkt No. 16, at ¶3). Additionally, the payments to the Debtor's chief executive and principal shareholder currently approaches $50,000 per month, which is wildly excessive under the circumstances. (See Dkt. No. 2, p. 13).[3]

If permitted to use cash collateral to pay $100,000.00 in professional fees, for example, Regions' cash collateral position diminishes by exactly $100,000.00. To adequately protect Regions from that collateral loss, the Debtor must provide something to offset that loss. Additionally, it is the Debtor's burden to show that it is able to provide Regions with adequate protection for the use of its collateral. 11 U.S.C. § 363(p). The problem for the Debtor is that it has nothing to provide. There is no unencumbered cash or property from which to provide adequate protection to Regions.

Should the Debtor suggest that it can adequately protect Regions by granting a replacement lien in future cash, such an argument fails under the recent *Buttermilk Towne Center* case. In *Buttermilk Towne Center*, the Sixth Circuit Bankruptcy Appellate Panel had to decide whether a lender could be adequately protected with a replacement lien in future rents that was intended to offset the expenditure of current rents. 442 B.R. at 564-65 (framing the issue as "whether a lender is adequately protected by a replacement lien on rents in which the lender has

---

[3] Curt Jones, Debtor's President and majority shareholder, has received $552,974.35 for the period between October 17, 2010 and October 15, 2011, and has received in excess of $23,000 every two weeks since May 2011.

6

an independent security interest").[4]  Citing the Sixth Circuit's unpublished *Stearns Building* opinion, the BAP concluded that, when a lender has an independent security interest in rents, then "a replacement lien [in those rents] is not adequate protection." *Id.* at 566 (citing *Stearns Bldg. v. WHBCF Real Estate (In re Stearns Bldg.)*, 165 F.3d 28 (6th Cir. Sept. 3, 2998)). Likewise, where a lender has an independent security interest in proceeds – as here – a "replacement lien" in any such proceeds cannot be adequate protection because Regions already has a lien in those proceeds.  The Debtor must provide something else to protect Regions for the use of its cash collateral.  Here, the Debtor has nothing else to provide and the Motion must be denied.

## CONCLUSION

WHEREFORE, Regions respectfully requests that the Court enter the attached Order denying the Motion.

Respectfully submitted,

*/s/ Brian H. Meldrum*
Brian H. Meldrum
D. Cooper Robertson
STITES & HARBISON, PLLC
400 West Market Street
Suite 1800
Louisville, KY  40202-3352
Telephone: (502) 587-3400
Facsimile: (502) 779-8296

*COUNSEL FOR REGIONS BANK*

---

[4] The distinction between "rents" in *Buttermilk Towne Center* and "proceeds" in the instant case is immaterial, as both constitute cash collateral pursuant to Sections 363(a) and 552(b).

## CERTIFICATE OF SERVICE

    I hereby certify that a copy of the foregoing Objection was served on this 14th day of November, 2011 either via the ECF System, which will send an electronic notice of filing to counsel of record and all parties having filed a request for notice.

                                                  */s/ Brian H. Meldrum*
                                                  Brian H. Meldrum

857189:1:LOUISVILLE