**UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION**

*Filed Electronically*

| | |
|---|---|
| IN RE: | CHAPTER 11 |
| DIPPIN' DOTS, INC. | CASE NUMBER: 11-51077 |
| DEBTOR | HON. THOMAS H. FULTON |

**UNITED STATES TRUSTEE'S OBJECTION TO DEBTOR'S MOTION TO MAINTAIN PRE-PETITION BANK ACCOUNTS**

Comes now the United States Trustee ("UST"), Samuel K. Crocker, by undersigned counsel, and objects to Dippin' Dots, Inc.,'s (hereinafter "DDI" or "the Debtor") Motion for [an] Order to Authorize Continued Use of Existing Business Forms and Records and Authorizing Maintenance of Existing Corporate Bank Accounts and Cash Management System (the "Motion to Maintain") [dkt # 19]. In support of his objection, the United States Trustee states as follows:

RELIEF REQUESTED

1.) The UST objects to the Motion to Maintain because: (i) the UST's Operating Guidelines (the "Guidelines") provide simple, low cost and non-disruptive protections to the DIP and its creditors; (ii) DDI's Schedule B indicates that it maintains cash in one account that exceeds the FDIC insurance limit; (iii) DDI's cash management system is not complex enough to warrant a waiver of the Guidelines; (iv) the present economic environment has led to an unprecedented number of bank failures making the Guidelines even more crucial than in normal times; and (v) DDI as a DIP, is a fiduciary of its creditors and should seek to provide the maximum protection for assets of the estate in order to ensure the largest possible return to those creditors.

## JURISDICTION & STANDING

2.) This Court has jurisdiction over this matter under 28 U.S.C. §§ 1334(a) & (b); 28 U.S.C. §§ 157(a) & (b)(1); and 28 U.S.C. § 151. This is a core proceeding under 28 U.S.C. § 157(b)(2)(A).

3.) The United States Trustee has standing to bring this motion pursuant to 11 U.S.C. § 307 and 28 U.S.C. § 586.

4.) On November 3, 2011 (the "Petition Date"), DDI filed a voluntary petition for bankruptcy relief under Chapter 11 of Title 11 of the United States Code (hereinafter the "Bankruptcy Code"). Since the Petition Date, DDI has continued to operate its business as a debtor-in-possession ("DIP") pursuant to 11 U.S.C. §§ 1107(a) and 1108. The UST has not yet appointed a committee of unsecured creditors or a Chapter 11 trustee in this case.

5.) On November 8, 2011, DDI filed the Motion to Maintain. DDI's grounds for requesting this extraordinary relief are that: (i) DDI's cash management system is complex and any change could cause a major disruption in the collection and distribution of monies; (ii) DDI's current bookkeeping system provides sufficient protections against accidental or intentional payment of prepetition obligations; and (iii) requiring DDI to comply with the requirements of the Guidelines would severely disrupt the flow of the Debtor's operations.

6.) The Guidelines require Chapter 11 debtors to close pre-petition bank accounts and open DIP bank accounts at authorized depositories. The portion of the Guidelines requirements which pertain to bank accounts are based, in part, on the Bankruptcy Code's mandate that a debtor-in-possession invest or deposit estate monies

into an account which "will yield the maximum reasonable net return on such money, taking into account the ***safety of such deposit or investment***." 11 U.S.C. § 345(a)(emphasis added).[1] The UST maintains a list of authorized depositories which are Federal Deposit Insurance Corporation ("FDIC") insured and provide additional collateral for accounts that exceed the FDIC limits.[2] The UST requires additional collateralization from authorized depositories because the FDIC's $250,000 insurance limit is an aggregate amount encompassing all accounts the depositor has at a given bank. The additional collateral protects against the risk of loss when a DIP depositor has an aggregated total of deposits in excess of $250,000 at a single bank. The FDIC insurance plus the additional collateral pledged by the authorized depository provide creditors with the utmost assurance that monies held by the DIP will be protected against bank failure. Additionally, the UST requires that authorized depositories report the number of DIP accounts they have open and the current balance of each account. This allows the UST to monitor DIP accounts to ensure that: (i) a DIP is not dissipating funds without court approval and (ii) a DIP's monthly operating reports are accurate.

7.) Furthermore, the Guidelines require the DIP to change its financial forms. Specifically, the UST requires that the DIP's new checks be imprinted with: (i) the designation "debtor-in-possession"; and (ii) the debtor's bankruptcy case number signifying that the DIP is now a trustee and operating as a fiduciary. These low cost requirements insure that: (i) routine, prepetition debts are not paid through prepetition

---

[1] Section 345(b) explains that a bond must be posted in favor of the United States to provide insurance of estate funds "[e]xcept with respect to a deposit or investment that is insured or guaranteed by the United States or by a department, agency, or instrumentality of the United States or backed by the full faith and credit of the United States." In this case, as will be explained below, DDI's accounts exceed the FDIC's aggregate deposit limits and are not insured by the FDIC by the amount over that aggregate limit.

[2] The UST maintains this list of authorized depositories in order to carry out its oversight responsibilities of Chapter 11 debtors. See In re Americana Expressways, Inc., 133 F.3d 752, 756-757 (10th Cir 1997).

bank accounts after the debtor has filed its petition; and (ii) notice of the debtor's bankruptcy is provided to all parties transacting business with the debtor post petition.

8.) The United States Trustee objects to DDI's maintenance of its current bank accounts at Regions Bank ("Regions") because Regions is not an authorized depository.[3] As such, Regions has not posted any additional collateral which would provide protection to creditors in the event that it failed at a time when DDI's aggregate account balance exceeded $250,000. In the instant case, this is particularly significant because DDI's Schedules indicate that, on the Petition Date, it maintained cash in a single account which exceeded the FDIC's insurance limits. See Chapter 11 Voluntary Petition dkt # 1 at 23 ¶2. Since DDI clearly has individual accounts that exceed the FDIC aggregate limit, this Court should not allow DDI to maintain its current bank accounts at a non-authorized depository because such an action would unnecessarily increase the risk of loss to creditors of the estate herein.

9.) Furthermore, in instances where bankruptcy courts have allowed DIPs to maintain their prepetition bank accounts and financial forms, the operations of those DIPs were far-reaching and complex. For example, DDI cites In re Jillian's Entertainment Holdings, Inc., Case No. 04-33192 (Bankr. W.D. Ky. May 26, 2004) as support for the proposition that "courts have often waived the [Guidelines'] requirements and replaced them with alternate procedures." However, Jillian's Entertainment operated 35 restaurants in 18 states and utilized 50 bank accounts to manage its business. Jillian's used a daily system to sweep local deposit accounts from all of its

---

[3] In the Motion to Maintain, DDI incorrectly asserts that Regions is an authorized depository. Regions is not currently on the UST's list of authorized depositories. However, DDI maintains accounts at Branch Banking & Trust ("BBT"), which is currently on the UST's list of authorized depositories. The UST suggests that DDI could simply use BBT as its bank during the pendency of this Chapter 11.

locations into two bank accounts maintained by a single banking institution. In addition, Jillian's maintained special depository accounts for the numerous credit card transactions it processed on a daily basis. This cash management method was necessitated by the complexity, size, and geographical scope of Jillian's business. This complex cash management system provided the operative factors underlying Jillian's request for a waiver of the Guidelines. On information and belief, Jillian's cash management model is distinct from DDI's because DDI has one location and three bank accounts.[4] Accordingly, DDI does not have the volume or geographic challenges that were present in Jillian's business model. DDI has not explained how this system of banking is sufficiently complex to require a waiver of any of the Guidelines. Furthermore, DDI has failed to adequately explain how obtaining new checks with "debtor-in-possession" imprinted on them will cause any significant disruptions in DDI's operations.

10.) Given the historically high number of bank failures occurring over the past two years, the UST asserts that requiring a Chapter 11 debtor to use an authorized depository is not burdensome and, in fact provides low-cost, pragmatic protections for the bankruptcy estate as a whole. To date, during calendar year 2011, the FDIC reports that there have been 88 bank failures throughout the United States. See The FDIC's Failed Bank List available at http://www.fdic.gov/bank/individual/failed/banklist.html. This high pace of bank failures has remained fairly consistent since 2008. See Id. Based on this instability in the banking sector, the UST urges this Court to require that DDI comply with the banking

---

[4] Since this case was filed such a short time ago, and DDI's Motion to Maintain was quickly set for a hearing, the UST's understanding of DDI's operations is limited to the information contained in the Motion to Maintain and DDI's bankruptcy schedules.

requirements within the Guidelines because those requirements protect both the DIP and its creditors.

11.)  Moreover, since DDI, as a debtor-in-possession, is a fiduciary of its creditors, it has a duty to ensure the utmost protection of the monies it holds which will benefit those creditors.[5]  By depositing its funds with an authorized depository, DDI will ensure that its creditors will receive payment quickly in the event that there is a bank failure.  Since bank failures during the last 12 months have been increasing at a rapid rate, such protections are particularly valuable at the present time.

12.)  The foregoing notwithstanding, the UST would agree to adding Regions Bank to the list of authorized depositories provided that Regions Bank consents to the UST's standard authorized depository agreement.

Wherefore, the UST requests that this Court: (i) deny DDI's Motion to Maintain; (ii) order DDI to comply with the Guidelines within 15 days of the order; and (iii) provide any further relief to which the UST may be justly entitled.

Dated: November 15, 2011

Respectfully Submitted,

SAMUEL K. CROCKER
United States Trustee, Region 8

By:  /s/ Charles R. Merrill
Charles R. Merrill, Trial Attorney
U.S. Department of Justice
Office of the U.S. Trustee
601 W. Broadway, Suite 512
Louisville, KY 40202
(502) 582-6000 – Telephone
(502) 582-6147 – Facsimile
email: charles.merrill@usdoj.gov

---

[5] DDI has a duty to account for the property, including cash, that it receives during the course of its Chapter 11 proceeding.  See 11 U.S.C. § 704(a)(2); 11 U.S.C. §1106(a)(1).  In order to ensure that DDI can account for the property it posseses, this Court should order DDI to use an authorized depository as its bank.

## CERTIFICATE OF SERVICE

        In accordance with Local Rule 9036-1(a)-(c), I certify that on <u>November 15, 2011</u>, I sent a copy of the foregoing ***United States Trustee's Objection to Debtor's Motion to Maintain Pre-Petition Bank Accounts*** to all parties who requested notice in the above captioned and styled case by either: (1) electronic means through the Bankruptcy Court's CM/ECF system; or (2) First Class U.S. Mail if the Notice of Electronic Filing from this Court's CM/ECF system indicates that there are interested parties not deemed to have consented to electronic notice or service.

                                   /s/ *Charles R. Merrill*
                                   CHARLES R. MERRILL